## 31768.  RUSSELL *et al.* v. RADFORD.

DECIDED NOVEMBER 26, 1947.  REHEARING DENIED DECEMBER 16, 1947.

*Pierce Brothers,* for plaintiffs in error.

*Lewis & Lewis,* contra.

SUTTON, C. J.  T. W. Radford made application to the land processioners of the 69th Militia District of Burke County to have the dividing lines between his land and the land of the adjacent owners on the east and south, L. A. Russell Jr. and Doretta Russell, surveyed and marked anew.  The processioners, along with the surveyor designated for this purpose, proceeded to survey and mark the eastern boundary lines and filed a return, to which was attached a plat made by the surveyor, showing the lines purportedly surveyed and marked anew by them. In this return, the processioners stated that one of the disputed lines (the southern boundary line) was a branch line and that they "followed the run and meanderings of said branch for a distance of approximately 1200 feet."  On the plat attached to the return, this line was designated as "branch, the line, S. 73° E. 924" feet.

L. A. Russell and Doretta Russell filed a protest to the return of the processioners, and set out as one of the grounds of protest that the processioners and surveyor did not survey and measure the southern boundary line of T. W. Radford's land or trace and mark the same anew, but that a portion of the line shown on the plat as having been established by the processioners was not surveyed and marked by them.

The case proceeded to trial in the superior court, and the jury found in favor of the applicant.  The exception here is to the judgment overruling the protestants' amended motion for a new trial.

■ In the case of disputed boundary lines between adjacent landowners, either party may apply to the processioners of any district in which a portion of the land lies to have the disputed lines surveyed and marked anew, and 10-days' written notice of the time of such running and marking shall be given to all of the adjoining landowners, as required by law.  Code, §§ 85-1605, 85-1609.  Whereupon, "It shall be the duty of the county surveyor, with the processioners, taking all due precaution to arrive at the true lines, to trace out and plainly mark the same.

The surveyor shall make out and certify a plat of the same and deliver a copy thereof to the applicant; and in all future disputes arising in reference to the boundary lines of such tract, with any owner of adjoining lands, having due notice of such processioning, such plat and the lines so marked shall be prima facie correct, and such plat, certified as aforesaid, shall be admissible in evidence without further proof." § 85-1606. In the present case, on the plat attached to the return, the southern boundary line of the applicant's land is described and shown as beginning and ending at stake corners with a meandering line drawn between these corners, designated "branch the line, S. 73° E. 924," but the return of the processioners states that "they followed the meanderings of said branch for a distance of approximately 1200 feet and that the run of the branch was the line at this point." However, it is undisputed from the evidence that the surveyor and processioners did not survey or measure this branch line or trace and mark it, and how or in what manner the course and distance of south 73 degrees east 924 feet, as shown by the plat, was arrived at does not appear from the record in the case.

There was evidence that, at some previous time, a stream of water had existed along the line designed as a branch line, and that this stream was the boundary line between the applicant and the protestants. "The beds of streams not navigable belong to the owner of the adjacent land; if the stream of water is the dividing line, each owner is entitled to the thread or center of the main current; if the current change gradually, the line follows the current; if from any cause it takes a new channel, the original line, if capable of identification, remains the boundary. Gradual accretions of land on either side accrue to the owner." Code, § 85-1302. Under the record, it appears that the exact location of the branch at the time of the survey was not shown. It was shown that at the time of the survey there was no water in the channel of what had, at some past time, been a branch or stream of water, and that the first stake corner established by the processioners was placed at a point some 20 feet from the low place in the channel and the place that an iron stake was found some days after the processioning was completed. The branch shown on the plat as the line between the land of the

applicant and that of the protestants was not a stream of water so that the thread or center of the main current could be ascertained, but it was variously described in the testimony as "not a running branch, it is dry now. . . It was dry when we were up there," "not a swift running stream, just a flat place," "a wet weather branch," a "ditch," a "swamp," a "branch swamp," a "wet swampy branch," and as a "dry weather branch. I don't think there has been any water in there." There was evidence to the effect that, at some time in the past, a stream of water had existed at or near the place designated by the processioners as a branch, but it was undisputed that at the time of the survey there was no stream of water at that point, and that the processioners and surveyor did not, at this place, survey and mark anew any boundary line between the land of the applicant and that of the protestants. "Until a line is run and marked by the processioners, no protest can be made, and without such protest duly made there is no authority of law for returning the papers to the superior court or for any trial in that court touching the action of the processioners." *Amos v. Parker*, 88 *Ga.* 754 (16 S. E. 200). While the return and plat in the present case recite that said line was run and marked by the processioners, it affirmatively appears from the evidence of the surveyor, the three processioners, and the other witnesses that the line at this place was not run, and that it was not surveyed or measured.

It appearing, without conflict, from the evidence that the line where a branch formerly existed was not run and marked by the processioners, the superior court had no authority to establish any line in so far as that boundary line was concerned. "Prior to the act of 1901 (Ga. L. 1901, p. 39), it was necessary for the processioners and the surveyor to trace and mark anew the lines around the entire tract of the applicant for processioning, before the plat certified by the surveyor and the lines so marked should be prima facie correct and such plat admissible in evidence without further proof." And, "where it appeared that the lines around the entire tract of the applicant were not surveyed and marked anew, it was proper to dismiss the entire proceeding, on motion of the protestants." *Gillis v. Taylor*, 127 *Ga.* 676 (1, 2) (56 S. E. 992), and citations. By the amendment

of December 17, 1901 (Ga. L. 1901, p. 39), the following provision was added to the statutory requirement: "Provided, it shall not be necessary to run any lines between adjoining landowners except the lines in dispute." In this case, the application to the processioners stated that the disputed lines were those on the east and south of the applicant's land, between the applicant and the protestants. In running one of the disputed lines, the processioners and surveyor began at what they determined was formerly a corner tree and ran and marked the line to a point some 20 feet from the bed or channel of where the branch used to be, and there they discontinued surveying and marking the line and went across the applicant's pasture for a distance of approximately 1200 feet, where they set up on another north and south line and surveyed and traced that line back to a point on the branch, or where a branch used to be. It appears, without conflict, that the southern boundary line of the applicant's land, the one where a branch was formerly located, was not traced and marked by the processioners. "In order to give the superior court jurisdiction over a protest to a return of processioners, it is necessary that a majority of the processioners with the surveyor shall have actually traced and marked the disputed boundary lines." *Reynolds* v. *Kinsey,* 50 *Ga. App.* 385 (3) (178 S. E. 200). While the return of the processioners, with the plat attached thereto, is regular on its face, it appears without conflict from the evidence that the processioners did not run and mark anew a portion of the disputed line between the applicant and the protestants, as required by the Code, § 85-1609, and their return was therefore without legal effect under the provisions of the processioning law. *Watson* v. *Bishop,* 69 *Ga.* 51. The verdict of the jury is without evidence to support it, and the trial judge erred in overruling the general grounds of the protestants' motion for a new trial.

As it appears from the evidence that the return of the processioners is without legal effect under the processioning law, and as it would not be proper for this court to order that the case be referred back to the processioners for them to complete their survey or make a new survey of the disputed lines (*Rawls* v. *Nowell,* 133 *Ga.* 874 (2), 67 S. E. 187), the case is reversed with direction that the trial judge enter an order dismissing the entire

proceedings. Under this view, of course, it is not to be understood that any ruling is made as to the correctness of the lines run by the surveyor and processioners.

Since the case is being reversed upon the general grounds of the motion for the reasons set out in division 1 of this opinion, the special grounds are not considered or passed upon.

*Judgment reversed, with direction. Parker, J., concurs. Felton, J., concurs in the judgment.*